Chief Justice Robertson,
delivered the opinion of the court.
On the 9th of December, 1818, Bartleít L.’Graves and James Graves sold, and by their covenant of that dale, undertook to convey, by deed of general warranty, -to Lewis Ellis, Dudley Ship and William C. Prewit, two hundred and twenty seven acres of land in Fayette county described by metes and bounds, and represented to have been devised by John McCreary to his two daughters the wives of the veift .dors.
*115 In the same article of agreement, signed by all the contracting parties, Ellis, Ship and -Prewit, covenanted to pay the consideration ($45 an acre) in two equal instalments; the first' payable sixty days, the twelve months, after the date of the contract, and-' both in “current Kentucky bank paper.” The deed was tobe made on the receipt of the first instalment; and the vendees took possession of the land which adjoined the farms on which they resided.
The first instalment not having been paid, the vendors, sometime in February, 1819, tendered to the vendees, a deed purporting to be signed by the former and and their wives, but which the latter refused to accept. A suit was then brought and judgment obtained for so much of the consideration as was then due. To in-join that judgment and obtain general relief, this suit in chancery was instituted by Ellis, Ship, and Prewit,, against B. L. and James Graves, on the 5th of October, 1822.
In November, 1824, Ship and the representatives of Ellis made a compromise with the Graveses, whereby it was agreed, that the consideration for one hundred and thirty acres of land (the agrégate quantity allotted to Ellis and Ship in the distribution by the vendees among themselves,) should be received in notes of the bank of the commonwealth at their nonfinal value; that Ship and Ellis’ representatives should therefore, be exempt from further responsibility, except for a portion of the costs; and that the compromise should, in no wise affect the rights or liabilities of Prewit.
The circuit court, supposing that there was a deficit of ten acres in the boundary defined in the covenant, decreed; that in consequence of the compromise, Prewit was- equitably responsible for the stipulated price for eighty-seven acres; and therefore, dismissed the bill without prejudice; perpetuated the injunction*, as to Ellis and Ship, and dissolved it without damages, to the extent of the liability fixed on Prewit by the decree- The court also, on a prayer to that effect in one of the answers, decreed against Prewit his proportion of the last instalment, adjusted by the ratio established by the decree; and' finally decreed that execution might issue against Prewit alone, and that he might be permitted to discharge the amount thus decreed against *116 him, by paying the like amount in Kentucky or Common wealth bank notes -T and that upon' a re-ucknowledgement, he should accept the deed which had been and which was re-tendered in an answer.
From this decree both parties have appealed to this-court.
The defendants below complain because damages were withheld, and because the decree allowed payment in bank paper.
Prewit assigns various errors, of which the most radical is, that the circuit court erred in not relieving him entirely from the judgment and the contract.
If Prewit be entitled to a rescisión of the contract, the defendants in the circuit court have no right to complain of the decree, however erroneous itmay be. We shall, therefore, consider the grounds relied on for rescisión; and if any of them shall be ascertained to be sufficient,,other and minor points involved in the decree will be preterxnilted.
Among other reasons urged by Prewit to show his right to a rescisión,he insists that the vendors are unable to make a good title to the land or to any part of it. If this be true, it will be unnecessary to examine other grounds upon which he seems to have relied with more confidence.
Were it conceded that a perfect title was vested in the wives of the vendors; and whether it was or not we shall not now decide; nevertheless, that title cannot he conveyed by the husbands. The femes, not having been parties to the contract, could never be compelled to relinquish to the vendees of their husbands; and consequently, the children who -would succeed as heirs to their mothers, would be under no-oh-, ligation to convey; Tivis, et al. vs. Richardson, VII Mon. 660.
Therefore, the decree directing a re-acknowledgement of the deed is entitled to no consideration. The femes not only were not bound by the contract, but were no parties to this suit.
They might not, if living, be willing to relinquish their rights. Rut one of them died before the decree *117 Was rendeied, and left children surviving her. Her title coaid not, therefore, be relinquished by any re-acknowledgement.
person, who at the instance of the olerJc fmi®' thc°certífi-00t cato of feme’s relinquishment, is a competent the certificate was endorsed, ^menf*1 -6n" matter ofrecord shall not b^rie!^tPt[10 2 -¡vhen 10 the enroldeed was* made, shall. linquishment cannot, after enrolment, be contradicted or altered by evidence “m P*™”
The consequence of this consideration is, that the vendors have not shown an ability to convey a good title in fulfilment of their covenant, unless the deed which they tendered can have the effect, without reacknowledgement, of transferring the title of th efmes.
That deed was not accepted, to accept it. Prewit was not bound
1st. Because he denied that it covered the land which was sold, and there is no proof that it did, hut on the contrary there is a strong probability that it did not.
2d. It does not appear that the deed was so authenheated, when tendered,as to show that the femes had relinquished their rights. There is no proof that there was, then, any endorsement upon the deed. The ccrtificate of relinquishment which now appears upon it, was not endorsed until 1825. This is clearly proved by the deposiiion of the person vs ho, at the instance of the clerk, wrote the certificate. His testimony is competent to prove such a fact, lie does not coutradict a record.
There is a manifest distinction between a “record” (which is the registry of some judicial matter) and a iking recorded, “in perpetuam rci memoriam.” “Although enrolment or matter of record shall not be tried per pais, yet the time when the enrolment of a deed was made, shall.” Jacob’s Law Dictionary, title en- . - J 7 - rolment. Wherefore, although the certificate of relinquishment could not, after its enrolment, be contra-dieted or altered, by evidence, “m pais,” nevertheless, the deposition was competent to prove'when the certificate was endorsed, especially, as it has never been recorded.
If, then, there was any endorsement on the deed when it was tendered, one which now appears on the original was the only one: that is “acknowledged by J. Graves, B. L. Graves and their wives, February 23, 1819; attest, J. G. Rodes, clerk,”
The practice of clerks, to make short memoranda at the time of the privy examination of a feme, and postpone writing ‘íhe formal certificate until the recording, is irregular •
The certificate of the-privy examination of a feme must be recorded.
The law docs not require the certificate of the privy examination of a feme to be read to her or to be written at the time of, or immediately succeeding her examination .
If a legal privy examination of a feme aníre^rdeír within proper time, the title thought He-certificate was'recorded. But it is more t^heíTirit6 of the law and more safe th enrtifioate of PrilT e'*-animation fatty on the l],cetl P"or to filing it.
*118 This was not sufficient evidence to assure Prewil' that the relinquishment by the wives had been taken effectually.
It may be the practice of some clerks to make only a simple memorandum, as in this case, at the time of privy examination, and postpone writing the foi mal certificate until.the recording.- This is, however, at least irregular, and may be mischievous. The law requires clerks to take relinquishments by femes covert, in a very strict and formal manner. This-importaut duty has been frequently neglected. Unless the law shall have-been properly- complied with, the title must be imperfect. A clerk may not, in a particular case, have taken an acknowledgement by a feme covert in -such a manner as to divest her of her right; but not having drawn out his certificate, he might afterwards, when convinced of his duty, draw a certificate which, if true, would show that he bad observed the law strictly.
And thus, for want of means to show the truth, a title might be made to pass which had never been relinquished. But we-will not say that a privy examination would he ineffectual, unless a formal certificate of it had been made out, in extenso at the time of the examination. This would be unreasonably exact.
The law requires the examination to be made, and a certificate of it to be recorded. It does not require the certificate to be read to the feme, or written at the time of, or immediately succeeding, her examination/ If a legal examination shall have been made, and a proper certificate of it shall have been recorded within proper time thereafter, the title will be good, although the certificate was not written until it was recorded.' But ^ would be more conformable to the spirit.of .the law and much more safe to endorse the certificate-fully on the deed, prior to filing it.
Whether the certificate made out in this case, in 1825, should have any effect ns evidence, may well be but admitting that it should, or that, if it should not, the memorandum should, prima facie, be sufficient proof that a legal privy examination had been made by the clerk, the relinquishment then made, however formal it may have been, will not pass the ti-tie, unless the- chancellor has imparted or can impart ^ ^omo additional efficacy by relation or otherwise»
By the com-law the 'feme^coYei-r could be conveyetl only cml°mrocced" ing of record, such as a fine By the*com-™on law a ^^notion-eluded by a feoffment, noi* an<jsap!gam since the statute of 32. ?•110 aot bandilono can operate the wife’s right,
ert does not pass her free«otó, unless a ¡1Gr p,.;Vy ex_ h0
By the-eommon'law, the freehold of a feme covert eould be conveyed-only by some judicial proceeding upon record; such as fine, or recovery. A married woman was not concluded by feoffment; (Co. Lit. 326, A. Clancy, 163;) nor by bargain and sale. ' °
. Since the 32, 11. 8th, no act of the husband alone, could operate as a discontinuance of the wife’s right. . °
By statutes of Virginia in force here, and also, by acts of the legislature of this state, a more simple and convenient mode than any provided by the common law, has been prescribed for conveying the titles of femes covert. But each of these acts of assembly requires the certificate of privy examination to be recorded, and makes the recording of the certificate indispensahie.
As this construction has al rea dy been given by this court ió the statutes of conveyancing, we deem it wholly unnecessary to employ argument now to prove that a conveyance by a feme covert, does not pass her freehold, unless a certificate of her privy examination be recor-dcd. lllta lea: scrip fa,;” and we discern nothing unreasonable in such a requisition. Even this, is a relaxa-lion of the rigor of the common law; and we consider the statute law as expounded in Whittaker vs. Blair, et al. III J. J. Marshall, 236; wise and salutary. As a .■¡married woman cannot make a valid conveyance of her land, unless she he privily examined, and thereupon evince perfect willingness to part with her right uninfluenced by her husband, it would seem to be proper, that the certificate of the clerk, which is no act of hcr’s should not conclude her, unless it be recorded; or in other words, that, as at common law,, her right could be conveyed only by record, so now it should not pass without some evidence on record.
The deed tendered to Prewit, has not been recorded, find therefore, unless it can be made yet to take effect from its acknowledgement in 1819, by relation or otherwise, the title to the land is in the surviving feme and the children of her deceased sister, except so far as the husbands may be entitled to the use during their lives.
But, in our opinion, no court can now give effect to-tlie .deed of 1SI9, for the following rea=o.m>
The deed of fin infant is voidable until there is some confirmation of "it, after the removal of all disability. A deed voidable by an infant, may be avoided by his privies in blood, or heirs.
Aninfantfeme ■covert may avoid a deed acknowledged by her conformably to law.
1st. The wile of James Graves was an infant; at tbe time of her privy examination. This is satisfactorily proved. The deed of an infant is voidable, until after the removal of till disability, there shall have been some confirmation. And a deed'voidable by an infant may, in like manner, be avoided by his privies in blood or heirs. An infant feme covert may avoid as well as any other infant may avoid, a deed acknowledged by her conformably to law. We are aware of no reason or law which would render the relinquishment of an infant covri move binding on her than it would have 'been, if she hud labored only under (lie single disability of infancy. We know that the 5th section of an act of Virginia of 1748, declared that the relinquishment of a feme cov:rt, made and recorded according to the provisions of that act, should be as effectual as if the title had passed by fine.
And we know too, that a fine, levied by an infailt and recorded, was voidable during the minority only.
Hence, we admit, that unless the 5th section of the act of 1748, has been repealed, the infancy of the wife of J. Graves will have no effect, because she lived until after she obtained 21 years of age and made no attempt to avoid the effect of her acknowledgement before the clerk. But we consider the 5th section of the act of 1748, as constructively repealed by subsequent acts of the Virginia and Kentucky legislatures.
The act of 1785, (1st Dig. 308,) that of 1797,(313,) and other subsequent acts declare that a relinquishment by a feme, made in pursuance of their provisions and recorded, shall he as effectual as it would be if the. feme had. been sole..
Thus, in these various acts, the language used in the -act of 1748, has been dropped, and other terms, of an ’¡essentially different import, have been employed. We feel satisfied that the legislature Intended to place Hie relinquishments of infant femes covert on the same '■ground as that on which the law had placed the conveyances of other infants. This seems to.have been the opinion of the authors of the Digest of the statutes in force in this state, and the opinion also of the judges of this court who approved that Digest. For the 5th section of the act of 1748, has been pretermitted. That section and the language of the subsequent, acts, which *121 have been referred to, are incongruous. And moreover, no good reason could be imagined for retaining that lection. The only reason why a fine, acknowledged by an infant and recorded, could be avoided during infancy alone, was, because a fine being a judicial proceeding, the legal inference was, that the court had, as it should have done, adjudicated on the capacity of the cognizor; and therefore, the verity of the record was conclusive unless a superior court, afterwards, by inspection, had decided against the legal capacity. For if, ■on inspection, infancy had been ascertained/ the fine would fee reversed, although the infant had died or obtained 21 before the judgment of reversal; Shepheard’s Touchstone, 7N. 1.
The eertifi'cate of relinquishment by a feme covert must be recorded within the time prescribed for ruco rdingdeeds.
*121 But the clerk does not act judicially. His acts are merely ministerial. He has no right to decide on the capacity of those who acknowledge deeds before him, or whose deeds are proved before him. The acknowledgment or proof of a deed before a clerk is considered a matter “en paisf and is not conclusive as to capacity; Milner vs. Turner’s heirs, IV Mon. 245.
Even the county courts, when they took the acknowledgment or proof of deeds, acted ministerially. The only reason, therefore, for rendering a fine, levied by am infant, conclusive, unless avoided during infancy, does not apply to an acknowledgment before a clerk. It has been decided by this court, that a Seed acknowledged by an infant feme sole may he avoided after she •shall have become 21 years old; see Philips vs Green, III Marsh. 7; see also, to the same effect, Touchstone, 224, N. 3.
The privy examination of the wife of J. Graves could not, therefore, conclude her children, nor divest them of their right, as heirs, to her interest in the land. She never confirmed her acknowledgment. Her coverture would have disabled her, if she had attempted to do so in any other mode, than by a re-acknowl.edgment. No decree which could be rendered in this case, could affect her children; and more especially, as they are not parties.
2d. The-certificate of relinquishment of the femes not having been recorded, it is now too late to give .their acknowledgment effect. Although the acts of assembly have not directly prescribed any specific time *122 for the recording of relinquishments by femes covert-yet we are of opinion that a proper construction for effectuating the object of the legislature, requires that the certificate of relinquishment should he recorded within the time prescribed for recording deeds.
Wife’s title to freehold does riot pass from her until her aclcnowledg- • inent has been properly ta -ken and prop'frly recorded.
'Phe recording of the wife’s Tolinquishment, is as indispensable fo pass her titleto freehold as the relinquishment ilselfi 's-
The wife’s title does not pass from her until her acknowledgment has been, not only properly taken, but also properly recorded. Mr. Hargrave, in note 1, p. 121, of bis Edn. of Co. Lit. in explaining why a fine by a feme covert binds her says, “that the common notion of a fine’s binding femes covert merely by reason of the secret examination of them by the judges,is incorrect;” and concludes, that the primary cause is the pendency of an action for the freehold, and that the secret examination is only secondary. We do not suppose that -the same reason would apply to the same extent, to a statutory relinquishment.
In that, perhaps the order of primacy would he transposed ; the privy examination is the most efficient cause; but it is ineffectual without the recording; the relinquishment is the initiation, and the recording of it is the consummation of the ceremonial prescribed for passing the freehold of femes covert. But each act is equally indispensable. Will the recording at any indefinite lime, however remote, be sufficient to pass the title? Will the recording of a relinquishment by a feme, tvventy y ears after her death be effectual? It might be as reasonable to suppose, that, as the recording is an essential pre-requisite to the divestiture of her right, the title would not pass at all, if she happened to die before her relinquishment had been recorded. But even such a construction, as this, of the statutes, would tend to frustrate their object.
She might die immediately or not long after her privy examination; and it would not seem reasonable, that such an event should necessarily and alone avoid her precedent and initiate act. To effectuate and not .pervert the intention of the legislature, it seems to us that the relinquishment of the feme may be recorded whenever the deed may he deposited availably for registration,.(if nbt afterwards,) so as to operate as notice to the creditors or purchasers of the husband; and shat when the clerk hasnoauthority to record thedeed,he has -no authority to record the relinquishment of the wife’s iri-r *123 heritance. The registry'act of H. 8th famishes some analogy. By that act, the enrolment of the deed was indispensable- to the transferrence of the title; and if the deed was not enroled within six calendar, months from its delivery, it was inoperative; but although the title- did not pass from the vendor before .enrolment, yet, an enrolment within the prescribed limitation operated by relation so as to pass the title from the delivery of--the. deed. - Touchstone, 926; Ba, -Ab. bargain and sale, E. Cro. Ja. 52, Co. Lit. 147
If the relió^"fem^oovert • be recorded in .proper time, h^r0c'e(oht’be recording, 6 will not affect • tlle tiUP-'
In Touchstone, 226, the annotator says; “accordingly, in Wood’s Inst. 259, if two bargains and sale's are made of the same lands to two several persons and.' the last deed is first enroled,-and afterwards the first deed is also enroled within - six months, the first buyer shall have the land.. For when the deed is enroled, the bargainee is seized of the land from-the delivery of tlfc deed,' and the enrolment shall relate to it.” But,'. “if a man bargains and sells to A, and afterwards makes a bargain and sale of the same land to B, and the deed to B is first enroled, but the deed to A,is not enroled witbin-sixmonths, the bargain and-sale is good; but if the deed to A had been recorded within the six months, the deed to B had been void.” The author on the same-page, says. “The enrolment of a bargain and sale, when it is done within six months, shall,- to. most purposes, relate to the time of the delivery or date of the deed.” And as a consequence of this doctrine, Jacob, in his Law Dictionary, title, Bargain and Sale, says; “neither the death of. the bargainor oe; bargainee before the enrolment of the deed, will'hinder the passing of the estate to the bargainee, but the estate of freehold is in the bargainor until the deed .is enroled.”
Now, under the statute of H. 8th, the enrolment of the deed was as indispensable to the passing of the title from the bargainor to the bargainee, as the recording of a relinquishment by a feme covert can be under the statutes of this state. As, therefore, the death'' of the bargainor before enrolment did not affect the right of the bargainee, provided the deed was enroled within six months, but the enrolment, within that time, vested the title from the delivery, by relation, it would appear-to be a reasonable conclusion, that if the relinquish-; ment of a feme covert be recorded in proper time, hep death, prior to the recording, should not affect the title; *124 and that consequently, it would be good from the date' of her relinquishment.
The relinquishment of of a feme covert must be recorded with in the time limited for recording-deeds, otherwise, it %vill pass no filíe.
Rut there must be some limitation to the time of recording. And- we can conclude from the foregoing considerations, from analogy and fitness and the very nature of the case, as well as from the language of the statutes, that thereiinquishmentmust be recorded- within the time limited for recording deeds, and that if it be not recorded within that time, it can pass no title. It is notnecessary now to decide whether or notthe depositing of the relinquishment for registration within the time prescribed for depositing deeds, would authorize the recording of the relinquishment at any subsequent time,, when the deed might be recorded. For in this case, it has not been shoivn that the deed -was deposited in proper time for Icing recorded. The consequence is, that as no title passed from-the femes by the deed tendered in this case,because their relinquishmentshavenever been, recorded, and because it does not appear that the deed was even deposited for registration, no decree, compelling Prewit to accept that deed, would vest in him the fee simple title to the land. And this too, seems to have occurred to the circuit court; for the decree, instead of directing Prewit to accept the deed as tendered, directs a re-acknowledgment of it. And this brings us to the third and last reason, showing that no deeree can vest Prewit with a perfect and indefeasable title.
Si. As one of the femes died before the decree was ered, there could, of course, be no re-acknowledgment by her. Her children were not parties, and if they had been, they could not have been compelled to part with their rights as heirs, as their mother, whom they succeed, had made no contract or sale, which- bound her or can bind them; and it is not to he presumed, that they would voluntarily surrender their rights without consideration, if they -were competent to do so. Even as to the surviving feme the decree would be nugatory, because she was no party, and is under no obligation to relinquish her patrimonial title.
We know of no mode by which a perfect and secure title could be decreed to Prewit. Perhaps, as by refusing to accept the deed, he has, in part, occasioned (he difficulty which now exists in the title, it might be *125 just that he should be compelled to hazard the conse'quences, If he had, captiously and without good reacons, refused to take the title when it was offered. But we have already shown that sufficient cause for to accept the deed, existed.
For the reasons which have been suggested, the circuit court erred in decreeing that Prewit should accept the deed on a re-acknowledgment of it; and we have endeavored to show that no decree which could have been pronounced, would have vested in him such a title as he has a right to demand. For the error which has been stated, the decree will be reversed. And the necessary consequence will he, that, on the return of the cause to the circuit court, a decree perpetuating the injunction as to Prewit, must be rendered, unless the record exhibits some sufficient obstacle to such a decree, notwithstanding the inability of the vendors to make a valid title.
On the hypothesis that the title is insufficient, the only objections to entire relief, which have been made by counsel, or which could be suggested, are the following.
1st. There is no specific prayer for a rescisión.
2d. Prewit paid a part of the consideration, and thereby, waived a rescisión.
3d. As the contract was joint, there cannot be a partial rescisión.
4th. It was the duty of Prewit to make the surviving feme and the children of the deceased feme parties, and if he had done so, he might have procured a good title.
These objections are all fallacious.
1st. The general prayer would authorize a decree /or a rescisión. The special prayer is for a perpetuation of the injunction. A rescisión is not only not inconsistent with such a decree, but is the natural and the virtual consequence of it. And therefore, the general prayer for relief would authorize a decree for rescisión; see Cooper’s Equity Pleading.
2d. Prewit paid $1,000 in 1822, and $100 in 1824. But at the times of payment he was struggling for relief. The payments were made in notes of the bank of the *126 commonwealth, then greatly depreciated, and wnicli were received at their nominal amount. Such payments were advantageous to Prewit, if he failed in procuring a rescisión of the contract; and, therefore, he made them, lie surely did not thereby waive his claim to relief. ;
3d. Although it is a general rulé that the chancellor will not decree a partial rescisión of a contract, there ■are exceptions from the rule, and this case furnishes one of them. •
Ellis and Ship had no power to control the equity of Prewit. They had no right,if they wore all entitled to a rescisión of flic entire contract, to deprive Prewit .of his individual rights by a compromise as to themselves; nor had the vendors a right to conclude ,the equity of Prewit, without his consent or privity; more» over, the contract of compromise did not attempt to affect him. It excepts him positively. He is not entitled to its benefits; and he cannot he prejudiced by it. It contains sufficient dala for a decree relieving Prewit entirely. Bat if any inconvenience or confusion should unexpectedly result from exempting Prewit frpm the contract, it will have been produced, not by him, but' by those who will be subjected to its consequences. They cannot compelí him to pay for any part of the land unless they are able to make him a title to the'.' land.
4th. It was not Prewit’s duty to make other parties for the purpose of ascertaining whether or not, a title could be made to him. This was the duty of those-who had covenanted to make the title. But it was unnecessary to make other parties; because if they had been wade, a sufficient title, or such an one as Prewit had a right to ask for, could not have been obtained.
Prewit is therefore entitled to be relieved from the contract, and to a restitution of tbe specie value of the payments which he had made with legal interest on that value, if it shall not exceed the value of his use of the land; and if his use of the land should exceed in value the interest on the value of hjs payments, he should account for the residuum.
The decree as to Ship and Ellis’ representatives witl¿ °f course, remain untouched.
Chinn, for Prewit; Wiclclijfe and Woolley, for Graves; it a!.
Wherefore, the decree of the circuit court, against Drewit, is reversed, and the cause remanded with instructions to render a decree conformable to this opinion. James and Bartlett A. Graves must pay the costs of both appeals in this court, and the costs incurred by Prewit in the circuit court.